## Baily Petition.

614

Argued September 27, 1950. Before Drew, C. J., Stern, Stearne, Jones, Ladner and Chidsey, JJ.

*Lloyd E. Pollock,* for appellants.

*Albert A. Sayers,* with him *G. Kirby Herrington,* and *Sayers & Hawkins,* for Peoples Natural Gas Company, appellee.

*J. R. Scott,* with him *Scott & Hook,* for Earnest Clyde Varner, appellee.

Opinion by Mr. Justice Ladner, November 20, 1950:

This matter came before the court below on a petition for a Declaratory Judgment, Answers thereto, and a stipulation of facts. The essential facts may be summarized as follows:

James Stewart devised by Par. 6 of his will, a 122 acre farm to his son John, 72 acres absolutely and the remaining 50 acres for life, and if John died leaving issue, then to such issue in fee. "But should my said son John die without issue living at the time of his death, then said fifty acres is to revert to my three daughters, Maria, Emma and Mary E. to be held by them in equal proportions and in fee simple. If either of my said daughters should at that time be dead, the share of such deceased daughter shall go to her heirs."

All three daughters conveyed by general warranty deeds their respective interests in the 50 acres to John. Two of the daughters died before John and one after him. John executed an oil and gas lease covering the whole farm of 122 acres to the Peoples Natural Gas Co. for a yearly royalty of $400. John then died without issue. His executor sold the 72 acres to Earnest Clyde Varner and the 50 acres to Karl M. Baily, who filed the Declaratory Judgment Petition. The stipulation agreed on the facts as well as questions which the court was asked to decide. These, in the order they were discussed in the opinion and the disposition by the court below were as follows:

1. What estate did John acquire by the deeds from his sisters? To this question the court answered that the sisters had no vested interest but only a contingent interest conditioned on their surviving John's death without him leaving issue. Consequently, as to the sisters, Maria and Emma, who died before John, it was ruled no interest passed under their respective deeds to John and therefore the respective heirs of these two daughters became the owners of ⅔ of the 50 acres at John's death without issue. However, as to the ⅓ interest conveyed to John by Mary, who died *after* John's death, John's estate acquired a fee under the familiar doctrine of title by equitable estoppel, her absolute title which became perfected at John's

death, when it accrued, passed by virtue of her previous deed to her grantee, citing *Clark v. Martin,* 49 Pa. 299 (1865); *Bowen v. Boyd Enterprises, Inc.,* 326 Pa. 385, 390, 191 A. 137 (1937).

2. The second question was whether the lease to the gas company was wholly void so far as the 50 acres was concerned because a life tenant may not operate or lease mineral rights where a mine or gas well was not opened before the life estate accrued. The court held John was more than a life tenant; he was in fact a tenant in common who believed himself to be an owner in fee. The lease was therefore not wholly void and the Gas Company were not wilful trespassers. In absence of malice therefore the damages to the ⅔ interest of the other tenants in common could be fairly measured by the value of the royalties paid which were the usual customary royalties, citing *McIntosh v. Ropp,* 233 Pa. 497, 82 A. 949 (1912).

3. The Court was asked to determine the proportion due each party in interest to the accumulated unpaid impounded royalties in the light of the decision of the two foregoing questions, because the lease covered the whole 122 acres but the only well was actually drilled on the 50 acres. The court, citing *Wettengel v. Gormley,* 184 Pa. 354, 39 A. 57 (1898), ruled that the royalties covered the entire tract regardless of what part the well was actually drilled on, and then apportioned the royalties between the owner of the 72 acres and owners of 50 acres on the basis of awarding the former 72/122 and the latter 50/122 of the royalties.

4. The lease contained a free gas privilege and the court was asked to decide which of the two tracts of land were entitled to this privilege, in view of the fact that there was a dwelling house on the 72 acres and one on the 50 acres, but free gas had never been used in the dwelling house on the 72 acres. The court ruled

that assuming the gas had been used in the dwelling house on the 50 acre tract, the parties were bound by John's election in that regard and therefore the free gas privilege would belong to the present owners of the 50 acre tract. If John had however never used the free gas privilege the cash value thereof, (fixed in the lease at $75.00 per year) would be distributable in the same proportions as the royalty payments.

Judge Hook, of the court below, pursuant to his comprehensive well-considered opinion, then entered a formal Declaratory Judgment on May, 19, 1947, adjudicating the rights of the respective parties and making definite awards to each party of the respective proportion due each of the royalties, etc.

Five days later, viz., May 26, 1947, counsel for the appellants made a written motion for re-argument in which it was averred (1) that the court failed to award the appellants (the owners of the ⅔ interest in the 50 acres) their respective shares of oil and gas royalties paid by the gas company to John from the date the well was drilled to the date the royalties were impounded, viz., from December 9, 1930, to March 9, 1936. (2) That the court erred in fixing the shares of the owners of the two tracts in the proportion of 72/122 and 50/122. On June 2, 1947, the court granted a rule to show cause why the matters set forth in the motion should not be reargued returnable the first Monday of July, 1947, but no stay of proceedings was asked for in the motion, nor was any granted in the rule. On November 24, 1947, nearly 6 months after the judgment was entered the court granted a reargument limited however to the first ground only, viz., the failure to pass on the rights of the parties to recover their shares of the royalties paid to John prior to his death. The original declaratory judgment was neither vacated nor opened and no stay of proceedings granted.

On May 29, 1950, a supplemental adjudication was had to which was appended a "Supplemental Declaration" or Judgment requiring the Gas Company to pay the sum of $382.00 in addition to the royalties impounded, to the owners of the ⅔ of the 50 acres.

Counsel for Earnest Clyde Varner, owner of the 72 acres filed a motion to quash the appeal because it was not taken within 3 calendar months of the entry of the original order, judgment or decree as required by law. While this is true as to the original judgment, it is not true as to the second or supplemental judgment, and since we have only one appeal we cannot quash the appeal though we can refuse to pass on the questions sought to be raised as to the first judgment.

It is well settled that the mere allowance of a rule for reargument or for a rehearing will not affect a final judgment unless the court retains control, as for example, by staying all proceedings in the meanwhile: *Philadelphia Suburban Transportation Co. v. DiFrancesco et al.*, 362 Pa. 326, 66 A. 2d 254 (1949). A motion for a rehearing and proceedings thereon do not have the effect of tolling the appeal statute where no stay of proceedings has been granted pending the rule: *Estate of William Frazier*, 7 Pa. Superior Ct. 473, aff'd 188 Pa. 415, 41 A. 528 (1898).

The learned counsel for the appellant cites in his brief our recent case of *International Electronics Co. v. N. S. T. Metal Products Co., Inc.*, 365 Pa. 173, 74 A. 2d 168 (1950), for the proposition that where a court has not disposed of all the issues on which a decision is required, a party may not appeal on a single issue. In that case, however, the plaintiff filed amended preliminary objections to the defendant's answer and new matter. The court dismissed certain of the objections to defendant's answer and sustained others and granted leave to defendant to file amended new matter. With the record in that form plaintiff appealed.

We held the order of the court interlocutory and quashed the appeal.

In the case before us the original declaratory judgment entered May 19, 1947, was a final distribution of the royalties impounded in possession of Peoples Natural Gas Co. and the court refused argument on the question involved in that distribution. It granted a reargument only on the question not previously considered, and not involved in the distribution of the impounded fund. It concerned a different claim and question of the right to recover from the Gas Company, royalties it had paid to John. The original judgment was not opened but a supplemental judgment was entered and this could not relieve the appellants of their duty to take an appeal within three months from the original declaratory judgment which had been left unaltered. In this aspect the instant case resembles *Henry's Estate*, 290 Pa. 537, 139 A. 198 (1927) more closely than that cited by appellant's counsel. Nor can the appellant save his right to appeal the question which the court declined to rehear by treating this appeal as one from the court's order of November 24, 1947, refusing reargument of that point as he seeks to do by his 6th statement under Rule 22, because a refusal of a reargument is not reviewable on appeal: *Seem's Estate*, 341 Pa. 198, 19 A. 2d 60 (1941). Moreover, even if reviewable his appeal was still too late to raise that question.

We rule, therefore, that we cannot consider the questions sought to be raised in regard to the original Declaratory Judgment of May 19, 1947. We do this with less regret as we feel the learned court below has correctly disposed of all these questions.

This leaves open for our consideration only the question raised in the 5th and 7th statement under Rule 22 which charge that the judge below erred in his supplemental adjudication when he found as fol-

lows: "Counsel for Edna B. Pollock and Maria Brant heirs contend that the Peoples Natural Gas Company should account for 2/3rds of the royalties from the date the well was completed, December 9, 1930, to March 9, 1936, when the gas company ceased making payments. We cannot agree with their position. The gas well was completed on December 9, 1930. The first quarterly rental of $100.00 was then due. The petition for declaratory judgment herein was filed December 2, 1938. Under the ruling of Trustees of the Proprietors of Kingston v. Lehigh Valley Coal Co., 241 Pa. 469, a recovery cannot be had for more than six years prior to the bringing of the suit. In this case a recovery is limited to royalties accruing subsequent to September 2, 1932. See also Findley v. Warren, 248 Pa. 315, 94 A. 69 (1915). From September 1932 to March 1936, when the rentals were impounded, fourteen quarters elapsed. The total payments for fourteen quarters amounted to $1400.00. Edna B. Pollock and the Maria Brant heirs are entitled to receive 2/3rds of 50/122nds of $1400.00, the amount of royalties erroneously paid to John Stewart within the six year period to the institution of this action." This he then calculated to be $382.50 and awarded the supplemental judgment against the gas company for that amount.

We think the learned court below, in the foregoing extract of his supplemental adjudication correctly applied the principles set forth in the cases cited by him, and his supplemental declaratory judgment must be affirmed.

Appellant also complains by his 10th statement under Rule 22 that the court below failed to dispose of the cost in the case. This was probably an inadvertence. However, that matter may yet be passed upon by the court below. The case is in nature an equitable proceeding and the court below can assess the costs, including those on this appeal, according to the equities

among the parties, and leave is now granted to the parties in interest to make application to settle such costs.

The judgment of the court below is affirmed, costs to abide the action of the court below.

Chief Justice DREW dissents.