J-S25013-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| DAVID J. MILLSTEIN, T/D/B/A MILLSTEIN & KNUPP | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LAWRENCE R. BURNS, ESQUIRE | : | |
| | : | |
| Appellant | : | No. 1527 WDA 2017 |

Appeal from the Order Entered September 14, 2017
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s):  2866 of 2013

BEFORE:  GANTMAN, P.J., PANELLA, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                FILED AUGUST 06, 2018

Appellant, Lawrence R. Burns, Esquire, appeals pro se from the order entered in the Westmoreland County Court of Common Pleas, which awarded unpaid legal fees to Appellee, David J. Millstein, t/d/b/a Millstein & Knupp.  We quash the appeal as interlocutory.

The relevant facts and procedural history are as follows.

> Appellee and Appellant are both attorneys, who are licensed to practice law in the Commonwealth of Pennsylvania.  In the summer of 2007, Appellant organized and administrated regularly scheduled poker games in Adamsburg and Seward[, Pennsylvania].  During that summer, state police simultaneously raided the Seward game and Appellant's home, seizing Appellant's property, including cash.
>
> After the raids but before criminal charges were filed, Appellant retained Appellee to represent [Appellant] in a civil forfeiture matter, through which Appellant sought to recover his seized property.  Appellant also sought criminal representation from Appellee, as Appellant believed criminal

charges were imminent. However, Appellee cautioned that he was "not a criminal lawyer" and did "not do criminal work," and thus Appellee agreed to represent Appellant only in the civil matter. The civil representation was memorialized in a letter (hereinafter "Agreement") dated August 15, 2007, which was signed by both parties. The Agreement cites a $200 per hour fee and the parties agree that the Agreement is limited to civil representation. Appellee represented Appellant in his civil forfeiture action, and was successful in getting Appellant's property returned to him.

After the civil matter was resolved, Appellant asked Appellee to continue to represent [Appellant] in the criminal case. Appellee agreed, despite his previous reservations about criminal law, as Appellant had convinced Appellee that the criminal case was rooted in "civil rights and constitutional law," in which Appellee was experienced. The parties agree that they never entered into a new fee arrangement. Appellee "assumed [the [fee] arrangement] was going to be the same" as it had been in the civil case, and billed the criminal matter at $200 per hour. Conversely, Appellant testified that, as soon as the criminal representation began, he told Appellee he "could not pay him for the criminal charges," and that the two "would have to work something out." However, Appellant insists that he and Appellee never reached a "[meeting] of the minds at all" with regard to Appellee's fee. Appellant said their only agreement was that Appellee would undertake the case without a clear fee arrangement, and that "we hoped eventually down the line we would have a meeting of the minds" with regard to Appellee's fee.

Appellee's criminal representation lasted until 2010. On June 20, 2011, Appellee sent Appellant a single invoice for his civil and criminal work, totaling $35,687.05. However, Appellee testified that, between December 10, 2008, and February 3, 2011, Appellant tendered 14 payments of $250, totaling $3,500. Thus, Appellant's outstanding balance is $32,187.05. Appellant "do[es] not question" the amount of time Appellee billed, but instead challenges the $200 per hour rate, to which [Appellant] insists he never agreed.

(Trial Court Opinion, filed September 14, 2017, at 1-3) (internal citations

omitted).

On June 10, 2013, Appellee sued Appellant for breach of contract for failure to pay counsel fees. Appellant filed preliminary objections on July 31, 2013. On August 8, 2013, the court ordered both parties to file briefs before it ruled on Appellant's preliminary objections. Appellee filed an amended complaint on August 19, 2013. Appellant filed an answer on June 11, 2014, and an amended answer and a new matter on July 10, 2014. On August 18, 2014, Appellee filed a reply to the new matter. After compulsory arbitration, on May 24, 2016, the arbitrators awarded Appellee $18,600.00, plus costs. Appellant timely filed a notice of appeal to the court of common pleas on June 23, 2016. The court held a bench trial on August 30, 2017. On September 14, 2017, the court entered an order directing Appellant to pay Appellee $17,760.00. Appellant filed no post-verdict motions. Instead, Appellant filed a pro se notice of appeal on October 12, 2017. The court did not order, and Appellant did not file, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review:

> BY NOT FILING POST-TRIAL MOTIONS REGARDING THE ISSUE OF THE COURT'S JURISDICTION AS SEEMS TO BE REQUIRED BY PA.R.C.P. 227.1, HAS...APPELLANT WAIVED THE ISSUE OF THE JURISDICTION OF THE COURT ON THE UNJUST ENRICHMENT AWARD?
>
> DOES A COURT OF COMMON PLEAS COMMIT ERROR WHEN IT AWARDED MONETARY DAMAGES FOR UNJUST ENRICHMENT WHEN NO CLAIM FOR UNJUST ENRICHMENT

- 3 -

WAS CONTAINED AS A COUNT IN THE WRITTEN COMPLAINT BEFORE THE COURT?

IS AN AWARD FOR UNJUST ENRICHMENT NULL AND VOID WHEN THE COMPLAINT CONTAINS NO COUNT EXPRESSLY CLAIMING UNJUST ENRICHMENT AND THE COURT HAS NO JURISDICTION TO AWARD A JUDGMENT BASED ON THE PRINCIPLE OF UNJUST ENRICHMENT?

(Appellant's Brief at 5).

As a prefatory matter, we must determine whether Appellant's appeal is properly before us.

> "The appealability of an order directly implicates the jurisdiction of the court asked to review the order." Estate of Considine v. Wachovia Bank, 966 A.2d 1148, 1151 (Pa.Super. 2009). "[T]his Court has the power to inquire at any time, sua sponte, whether an order is appealable." Id. Pennsylvania law makes clear:
>
> > [A]n appeal may be taken from: (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313).
>
> Stahl v. Redcay, 897 A.2d 478, 485 (Pa.Super. 2006), appeal denied, 591 Pa. 704, 918 A.2d 747 (2007). Pennsylvania Rule of Appellate Procedure 341 defines "final orders" and states:
>
> > Rule 341. Final Orders; Generally
> >
> > (a) General rule. Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.
> >
> > (b) Definition of final order. A final order is any order that:

(1) disposes of all claims and of all parties; or

(2) [RESCINDED]

(3) is entered as a final order pursuant to subdivision (c) of this rule.

(c)    Determination of finality.  When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim...the trial court...may enter a final order as to one or more but fewer than all of the claims...only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered.  In the absence of such a determination and entry of a final order, any order...that adjudicates fewer than all the claims...shall not constitute a final order.  ...

Pa.R.A.P. 341(a)–(c).  Under Rule 341, a final order can be one that disposes of all the parties and all the claims, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination under Rule 341(c).  Pa.R.A.P. 341(b)(1)–(3).

In re Estate of Cella, 12 A.3d 374, 377-78 (Pa.Super. 2010) (some internal citations omitted).

A verdict entered after trial is not a final order; a judgment entered on the verdict is the final, appealable order.  Billig v. Skvarla, 853 A.2d 1042, 1048 (Pa.Super. 2004); Davanzo v. Finelli, 437 A.2d 995, 996 (Pa.Super. 1981).  The entry of judgment on the verdict is a prerequisite to this Court's exercise of appellate jurisdiction.  Id.

Instantly, after the court held a bench trial on August 30, 2017, it entered a verdict as an order in favor of Appellee on September 14, 2017. Appellant did not file any post-verdict motions.  Instead, Appellant filed a

- 5 -

notice of appeal.  The certified record, however, shows the court had not entered judgment on the verdict when Appellant filed his notice of appeal or at any time to date.  See Billig, supra.  Therefore, this appeal is premature and we have no jurisdiction to entertain the appeal as filed.  See In re Estate of Cella, supra; Davanzo, supra.  Accordingly, we quash the appeal as interlocutory and unappealable.  See Pa.R.A.P. 341.

Appeal quashed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/6/2018